| Fill in this information to identify the case: |
|---|
| Debtor Name: Peter Joseph Tonkin |
| United States Bankruptcy Court for the Eastern District of Pennsylvania |
| Case number: 24-14399 (AMC) |

___ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11    02/20

## Peter Joseph Tonkin's Plan of Reorganization, dated March 10, 2025 (the "Plan")

### Background for Case Filed Under Subchapter V

**A. Description and History of the Debtor**

The Debtor is presently the sole owner and president/CEO of Student Health Advocates, LLC ("SHA"). The Debtor co-founded SHA in June 2020 with an individual named Joseph Conlan. SHA was formed to provide practical support and emergency contact services for junior and boarding students and their families. In a nutshell, SHA provides anything that students need off-campus, including housing and transportation.

Initially, the primary service offered by SHA was quarantine logistics and supply for students displaced from school due to Covid-19. These services were in high demand in the school year 2021-2022, as schools struggled to implement mandatory Covid-19 quarantine procedures. SHA's revenues spiked during this period, peaking in early 2022, and SHA sought to expand its range of student services. Also in 2022, at which point SHA's revenues were highest, the Debtor purchased Joseph Conlan's 51% interest in SHA for just over $2 million.

SHA's revenues nosedived soon after their peak in early 2022 as the demand for Covid-related services evaporated. SHA's revenue dropped from approximately $2.4 million in 2022 to $995 thousand in 2023 and $592 thousand in 2024. Many of SHA's clients—including its largest client responsible for approximately one-third of its revenue—did not renew their contracts in the summer of 2024. Accordingly, SHA has been forced to adapt and is in the process of revamping its servicing models to increase revenue and profits.

The Debtor's primary income is tied to SHA in the form of owner's draws. Accordingly, the Detor's income has declined as SHA's revenues have declined, resulting in the Debtor being unable to service the debt incurred in the purchase of the 51% SHA membership interest from Joseph Conlan. The Debtor's income—comprised of owner's draws and additional VRBO rental income of the Debtor's real property at 3527 Arcadia Lane—was hopelessly insufficient to repay the full amount owing to his creditors, including his largest creditor Joseph Conlan, who has filed a proof of claim against the Debtor of just over $1.5 million.

Accordingly, the Debtor has filed the instant chapter 11 case to reorganize his affairs. Pursuant to 11 U.S.C. § 1191, the Debtor intends to fund his Plan payments from his available disposable income, as more fully described in Subpart C below.

**B. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a chapter 7 liquidation. A Liquidation Analysis is appended to this Plan as Exhibit A. As shown therein, the estimated value of the Debtor's property totals $1,534,574.10, which property is encumbered by secured claims totaling

$1,424,220.49. The Debtor's exemptions total $51,219.55, which value is excluded from the Debtor's estate. Accordingly, there would be only $59,134.06 in unencumbered estate assets to administer in a hypothetical chapter 7 case.

After deducting the post-petition interest payable to secured creditors on their over-secured claims, the costs to be incurred upon sale of the Debtor's real estate, and applicable chapter 7 administrative costs, the amount available for distribution to general unsecured creditors in a hypothetical chapter 7 liquidation would be $0.00.

As more fully set forth herein, general unsecured creditors will receive under this Plan $8,145.84 in aggregate payments. This chapter 11 Plan is the only mechanism by which such creditors will receive any return on their claims.

**C. Ability to make future plan payments and operate without further reorganization**

The Debtor must also show that he will have enough cash over the life of the Plan to make the required Plan.

The Debtor has provided projected financial information as attached Exhibit B (the "Projections"). The "Effective Date" (as defined in Section 8.02 below) of the Plan shall be the later of either July 1, 2025 or the first business day that is at least 15 days following entry of a confirmation order by the Court. These Projections consist of a three-year cash flow from the anticipated Effective Date of the Plan (July 1, 2025) through June 2028. The final Plan payment is expected to be paid in June 2028. The Debtor notes that, due to recent and ongoing changes to SHA's business strategy and operations, the amount and timing of owner's draw income carry some degree of inherent uncertainty. Accordingly, the Debtor reserves the right to modify his Projections, if and as permitted by the Bankruptcy Code, prior to confirmation.

*You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.*

# Article 1: Summary

This Plan under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor from disposable income as more fully set forth in this Plan.

This Plan provides for:

| | | |
|---|---|---|
| | 0 | classes of priority claims; |
| | 4 | classes of secured claims; |
| | 1 | class of general unsecured claims; and |
| | 1 | class of interests that the Debtor has in property of the estate. |

General unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 0.41 cents on the dollar. This Plan also provides for the payment in full of administrative and priority claims.

All creditors should refer to Articles 3 through 7 of this Plan for information regarding the precise treatment of their claims. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

# Article 2: Classification of Claims and Interests

2.01  **Class 1** ................................... Other than priority tax claims and administrative expense claims (both of which are unclassified), there are no claims entitled to priority under § 507(a) of the Code. Accordingly, there are no claims in Class 1.

| | | |
|---|---|---|
| 2.02 | **Class 2** .................................... | Class 2 consists of the following claims, to the extent allowed as a secured claim under § 506 of the Code: |
| | | Class 2A consists of the allowed secured claim of Goldman Sachs Mortgage Company ("Goldman Sachs"), which is secured by its first-position mortgage on the Debtor's real property at 3527 Arcadia Lane, Skippack, Pennsylvania, pursuant to a promissory note and mortgage dated August 15, 2022, in the original principal amount of $1,253,700.00. |
| | | Class 2B consists of the allowed secured claim of First Resource Bank, which is secured by its second-position mortgage on the Debtor's real property at 3527 Arcadia Lane, Skippack, Pennsylvania, pursuant to a note and mortgage dated September 6, 2023, in the original principal amount of $100,000.00. |
| | | Class 2C consists of the allowed secured claim of the Police and Fire Federal Credit Union ("PFFCU"), which is secured by its liens on, and security interest in, the Debtor's 2018 Volkswagen Atlas pursuant to a retail installment sale contract dated May 31, 2019, in the original financed amount of $36,788.67. |
| | | Class 2D consists of the allowed secured claim, if any, of Joseph Conlan, which claim is secured by his lien on and security interest in certain collateral, including, as to the Debtor, 51% of the Debtor's membership interest in Student Health Associates, LLC. |
| 2.03 | **Class 3** .................................... | Class 3 consists of all general unsecured claims allowed under § 502 of the Code. |
| 2.04 | **Class 4** .................................... | Class 4 consists of the equity interests of the individual Debtor in property of the estate. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under § 1123(a)(1), Administrative Expense Claims and Priority Tax Claims, all as defined in Sections 3.02 and 3.03, respectively, are not in classes. |
| 3.02 | **Administrative expense claims** | "Administrative Expense Claims" shall consist of the allowed claims of (1) the Debtor's court-employed professionals, and (2) the Subchapter V Trustee. The Debtor estimates that the aggregate amount of allowed administrative expense claims will not exceed $36,000. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid pro rata from the Debtor's Disposable Income based upon their claims as allowed by this Court starting in the month of the Effective Date of the Plan and continuing each month thereafter until paid in full. As projected, |

|   |   |   |
|---|---|---|
| | | the Debtor believes that all Administrative Expense Claims shall be paid in full by June 2028. |
| 3.03 | **Priority tax claims** | The Debtor has one creditor holding a tax claim entitled to priority under 11 U.S.C. § 507(a)(8), the Department of the Treasury - Internal Revenue Service ("IRS").  This priority tax claim has been filed in the amount of $36,663.48. |
| | | The IRS shall be paid by the Debtor, in cash, in an amount equal to such allowed priority tax claim, plus interest at a rate of 7% per annum, in equal quarterly installments of $3,396.18 commencing in September 2025 and continuing through June 2028, or as otherwise agreed by the IRS, pursuant to Code Section 1129(a)(9)(C).  Each quarterly payment will be paid on the last day of the month in which such payment is due. |
| 3.04 | **Statutory fees** | Not applicable. |
| 3.05 | **Prospective quarterly fees** | Not applicable. |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01  **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1: Priority Claims** (excluding those in Article 3) | ☐ Impaired<br>☐ Unimpaired | There are no priority claims other than administrative expense claims and a priority tax claim, the treatment for which is set forth in Article 3.  Accordingly, there are no priority claims in Class 1. |
| **Class 2: Secured Claims** | ☒ Impaired<br>☐ Unimpaired | **Class 2A** consists of the allowed secured claim of Goldman Sachs on account of the promissory note and mortgage dated August 15, 2022, which claim is impaired.  Goldman Sachs has a valid and properly recorded first-priority mortgage on the Debtor's real property at 3527 Arcadia Lane.  The Debtor will pay Goldman Sachs its regular monthly mortgage payments (along with any applicable escrow) current post-petition.  Any prepetition arrearage will be paid by the Debtor upon the natural maturity of the loan. To the extent of its allowed secured claim, Goldman Sachs shall retain its mortgage on the Debtor's real property to the same extent, priority, and validity as it held as on the Petition Date until said allowed secured claim is paid in full.  The Debtor may pay the outstanding indebtedness through any mechanism he chooses, including through a sale or refinance transaction, any or all of which the Debtor is authorized to do without the need for Bankruptcy Court approval. |

|  |  |  |
|---|---|---|
|  | ☒ Impaired<br>☐ Unimpaired | **Class 2B** consists of the allowed secured claim of First Resource Bank on account of the note and mortgage dated September 6, 2023, which claim is impaired. First Resource Bank has a valid and properly recorded second-priority mortgage on the Debtor's real property at 3527 Arcadia Lane. The Debtor will pay First Resource Bank its regular monthly payments current post-petition. Any prepetition arrearage will be paid by the Debtor upon the natural maturity of the loan. To the extent of its allowed secured claim, First Resource Bank shall retain its mortgage on the Debtor's real property to the same extent, priority, and validity as it held as on the Petition Date until said allowed secured claim is paid in full. The Debtor may pay the outstanding indebtedness through any mechanism he chooses, including through a sale or refinance transaction, any or all of which the Debtor is authorized to do without the need for Bankruptcy Court approval. |
|  | ☒ Impaired<br>☐ Unimpaired | **Class 2C** consists of the allowed secured claim of PFFCU, which is impaired. PFFCU has a valid first-priority lien in the Debtor's 2018 Volkswagen Atlas. The Debtor will pay PFFCU its regular monthly payments of on account of principal and interest of this secured claim. Any prepetition arrears shall be paid in full by the Debtor upon the natural maturity of the loan. To the extent of its allowed secured claim, PFFCU shall retain its lien on the Debtor's property to the same extent, priority, and validity as it held as on the Petition Date until said allowed secured claim is paid in full. |
|  | ☒ Impaired<br>☐ Unimpaired | **Class 2D** consists of the allowed secured claim, if any, of Joseph Conlan, which is impaired. Joseph Conlan's claim is secured by his lien on and security interest in certain collateral, including, as to the Debtor, 51% of the Debtor's membership interest in Student Health Advocates, LLC. The Debtor has scheduled the Debtor's 100% interest in Student Health Advocates as having no value, and therefore disputes that the Class 2D claim is a secured claim. Accordingly, the Plan provides for no payments on account of the Class 2D claim. The Debtor anticipates seeking a determination as to the secured status of the Class 2D claim and to have Joseph Conlan's claim be determined to be a fully unsecured claim and therefore to be a Class 3 Claim. |
| **Class 3: General Unsecured Claims** | ☒ Impaired<br>☐ Unimpaired | **Class 3** consists of all general unsecured claims allowed under § 502 of the Code, which are impaired. |

| | | | |
|---|---|---|---|
| | | | Holders of allowed general unsecured claims shall be paid pro rata from the Debtor's disposable income during the Plan, as set forth in the Projections.  Based on the Projections, the first distribution to Class 3 claimants shall occur in September 2025, with subsequent distributions to occur quarterly thereafter and upon the conclusion of the Plan term in June 2028.  The payments to be made to Class 3 total $8,145.84, which is equivalent to approximately 0.41% of each allowed Class 3 claim based upon the scheduled and filed Class 3 claims in the aggregate amount of $1,991,586.51.  The treatment and consideration to be received by holders of Class 3 claims shall be in full settlement, satisfaction, release and discharge of their respective claims. |
| **Class 4: Equity Interests of the Debtor** | ☐<br>☒ | Impaired<br>Unimpaired | Equity interests in the Debtor will retain those interests. |

## Article 5: Allowance and Disallowance of Claims

5.01  **Disputed claim**    A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

(i)    a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii)    no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02  **Delay of distribution on a disputed claim**    No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.  The Debtor shall have up to 30 days after the order confirming the Plan becomes final and non-appealable to file objections to claims, and the failure to file a timely objection to any such claim shall result in the deemed allowance of the claim.

5.03 **Settlement of disputed claim**    The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

6.01 **Assumed executory contracts and unexpired leases**

(a) The Debtor assumes the following executory contracts and unexpired leases as of the Effective Date:

1. The residential lease with Oleg Shatalov, as set forth in Schedule G of the Debtor's bankruptcy schedules.

(b) Except for executory contracts and unexpired leases that have been assumed before the Effective Date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, the Debtor will conclusively be deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

The Plan will be implemented as more fully set forth on the Debtor's Projections, which are attached as Exhibit B.

The Plan sets forth a payment period that begins on the Effective Date and concludes on June 30, 2028, which is a three-year period (the "Plan Period"). The Debtor will fund its payments under the Plan from its projected disposable income received in the Plan Period.

Generally, the Projections consist of a template starting with expected revenues less household expenses and less payments required under the Plan.  Revenue numbers are based upon (1) the projected owner's draw that the Debtor will receive from his operation of Student Health Advocates, LLC, and (2) projected rental income via VRBO from short-term rentals of the Debtor's real property at 3527 Arcadia Lane.

Disbursements under the Plan are comprised of the following:

"Household Expenses" consists of monthly living/household expenses as set forth in the Debtor's Bankruptcy Schedule J.  This line item includes payments on account of the Class 2A, Class 2B, and Class 2C secured claims.

"Post-Confirmation Professional Fees" consists of the Debtor's bankruptcy counsel's post-confirmation fees in the amount of $500 per quarter.

"Alimony/Child Support" consists of the Debtor's ongoing monthly payments of $2,999 to his soon-to-be ex-spouse in accordance with their prepetition separation agreement.

"Administrative Expenses" consists of the Debtor's court-employed professionals in the anticipated amount of approximately $30,000, as well as the allowed claim of the Subchapter V Trustee in the anticipated amount of approximately $6,000.

"Priority Tax Claims" consists of the payments to the IRS on account of its priority tax claim, as set forth in Plan Section 3.03.

Finally, "Unsecured Distribution" consists of payments to General Unsecured Creditors, whose treatment is set forth in Plan Section 4.01 (Class 3).

The Debtor shall also, in his sole and absolute discretion, have the option of funding his Plan though a sale of some or all of his personal and real property. Any sale of the Debtor's property after the entry of the Order confirming this Plan shall be exempt from transfer tax pursuant to Bankruptcy Code Section 1146.

The Debtor shall have the exclusive right, but shall be under no obligation, to pursue causes of action allowed under applicable law or under the Bankruptcy Code ("Causes of Action"). Although the Debtor is not aware of any Causes of Action, if they do exist and the Debtor deems the prosecution of such actions to be in the best interest of the Debtor and the estate, the Debtor shall prosecute them diligently so as to conclude such actions as soon as practicable, with the proceeds therefrom being included as revenue and paid to creditors in accordance with this Plan to the extent, if any, that they increase the Debtor's Disposable Income.

From and after the Effective Date, the Debtor may, in the ordinary course and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

## Article 8: General Provisions

| | |
|---|---|
| 8.01 **Definitions and rules of construction** | Capitalized terms shall have the meaning ascribed to them in this Plan. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. |
| 8.02 **Effective date** | The "Effective Date" of this Plan is the later of (1) July 1, 2025, or (2) the first business day that is at least 15 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on either of those dates, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the |

Commonwealth of Pennsylvania govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**8.07 Corporate governance**  Not applicable.

**8.08 Retention of Jurisdiction**  The Court shall retain jurisdiction of this Case after the Confirmation Date for the following purposes:

a. To take any action with respect to the subordination, allowance, disallowance, validity, perfection, enforcement or avoidance of Claims and liens, including, determination of objections to the allowance of claims and amendments to schedules;

b. To classify the Claim of any Claimant and to re-examine Claims which have been allowed for purposes of voting, and to determine such objections as may be filed to Claim;

c. To determine any and all disputes arising under or the Plan;

d. To determine any and all applications for allowance of compensation and reimbursement of expenses herein;

e. To determine any applications for rejection of executory contracts and unexpired leases and to determine the amount of any Claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

f. To determine any and all applications, adversary proceedings and contested and litigated matters pending in the Case as of the Confirmation Date or filed within one hundred eighty days thereafter;

g. To hear, determine and enforce any Code-created Causes of Action and to authorize prosecution of same in such other courts as may be required by law;

h. To modify any provision of the Plan to the full extent permitted by the Code;

i. To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

j. To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under provision of the Code or otherwise deemed appropriate to accomplish the Plan's intent and purpose;

k. To grant extensions of any deadline set herein;

l. To enforce all discharge provisions under the Plan;

m. To enter any order, including injunctions, necessary to enforce the terms of the Plan, and the rights and power of the Debtor under the Code, this Plan and as the Court may deem necessary; and

n. To enter a Final Order closing this Case.

## Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

    a.    imposed by this Plan; or
    b.    to the extent provided in § 1141(d)(2).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first three years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

    a.    on which the last payment is due after the first three years of the plan, or as otherwise provided in § 1192; or
    b.    excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10: Other Provisions

1. The Debtor shall be responsible for disbursing all payments required pursuant to the Plan over the entire duration of the Plan. The Debtor shall file post-confirmation distribution reports as required under Local Rule 3021-1.

2. The Subchapter V Trustee (the "Trustee") shall file a Report of No Distribution with this Court upon termination of the Trustee's services, upon which the Trustee shall be discharged from all further duties as Trustee in the case.

Respectfully submitted,

/s/ *Peter Joseph Tonkin*
Peter Joseph Tonkin


SMITH KANE HOLMAN, LLC

By: /s/ *Nicholas M. Engel*
Nicholas M. Engel, Esquire
David B. Smith, Esquire
112 Moores Road, Suite 300
Malvern, PA 19355
Tel: (610) 407-7216
Fax: (610) 407-7218
nengel@skhlaw.com
*Counsel to the Debtor*